**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ESTATE OF ISMAEL GALVAN SOLORIO, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 23-cv-2660 (AHA/GMH) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This is one of several actions brought in this District by various groups of U.S. nationals—including soldiers, contractors, and their family members—under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* ("FSIA"), seeking damages for extrajudicial killings and other injuries occurring in Iraq in 2003 and after.  In this case, like others brought by the same law firm on behalf of other plaintiffs, Defendants are the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps ("IRGC"), the Ministry of Intelligence and Security ("MOIS"), Bank Markazi Jomhouri Islami Iran ("Bank Markazi"), Bank Melli Iran ("Bank Melli"), and the National Iranian Oil Company ("NIOC"), each of which allegedly provided material support for the terrorist attacks that caused Plaintiffs' injuries.  *See* ECF No. 7, ¶ 1; ECF No. 31 at 4; *see also Estate of Hartwick v. Islamic Republic of Iran*, No. 18-cv-1612, 2021 WL 6805391 (D.D.C. Oct. 1, 2021) [hereinafter *Hartwick II*]; *Estate of Fishbeck v. Islamic Republic of Iran*, No. 18-cv-2248, 2021 WL 6808189 (D.D.C. Mar. 1, 2021); *Holladay v. Islamic Republic of Iran*, 523 F. Supp. 3d 100 (D.D.C. 2021) [hereinafter *Holladay II*]; *Estate of Hartwick v. Islamic Republic of Iran*, No. 18-cv-1612, 2020 WL 12968924 (D.D.C. Oct. 10, 2020) [hereinafter *Hartwick I*]; *Holladay v. Islamic Republic of Iran*, 406 F. Supp. 3d 55 (D.D.C. 2019) [hereinafter

*Holladay I*].  Like the plaintiffs in *Hartwick*, *Fishbeck*, and *Holladay*, Plaintiffs here ask the Court to find (1) that all Defendants have been properly served under the FSIA and (2) that there is personal jurisdiction over each Defendant.  *See* ECF No. 44 at 3, 14.  The first question is "a narrow [one]: Have Plaintiffs satisfied the FSIA's service-of-process requirements?"  *Holladay I*, 406 F. Supp. 3d at 58.  It is also well-trodden ground as to the Defendants here and, as Judge Kollar-Kotelly found in *Hartwick*, Judge Cooper found in *Fishbeck*, and Judge Moss found in *Holladay*, this Court finds Plaintiffs have satisfied those requirements.  The road is somewhat rockier as to the second question.  Ultimately, the Court finds that it is premature to determine whether the requirements to exercise personal jurisdiction over Defendants have been met.  Accordingly, Plaintiffs' Motion for an Order Finding Effective Service of Process Pursuant to 28 U.S.C. § 1608 is granted in part and denied without prejudice in part.[1]

## ANALYSIS

### A.      Service of Process

Under the FSIA, the means of service depend on whether the defendant is a "foreign state or political subdivision of a foreign state" or an "agency or instrumentality of a foreign state."  28 U.S.C. § 1608(a), (b).  So, to evaluate whether service has been properly effected, the Court must "categorize each defendant to determine whether it must be served under § 1608(a) or § 1608(b)" and then "determine whether Plaintiffs' attempts to effectuate service satisfied the applicable requirements."  *Holladay I*, 406 F. Supp. 3d at 58.  As noted above, there is nothing new here.

---

[1] The document most relevant to this Memorandum Opinion and Order is Plaintiffs' Motion for an Order Finding Effective Service of Process Pursuant to 28 U.S.C. § 1608 and its attachments, ECF Nos. 44 through 44-2.  Page numbers cited herein are those assigned by the Court's CM/ECF system.

2

1.      Foreign State or Political Subdivision of a Foreign State

Section 1608(a) governs service on a foreign state or political subdivision of a foreign state. To determine whether an entity is a political subdivision of a state, a court considers whether its "core functions . . . are governmental" or "commercial." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003). If governmental, the entity "is considered the foreign state itself." *Id.*

"Iran is, of course, the foreign state itself[.]" *Holladay I*, 406 F. Supp. 3d at 59. And case after case has found that the IRGC and the MOIS are political subdivisions of the state of Iran. *See also, e.g.*, *Fishbeck*, 2021 WL 6808189, at \*2 (finding that the IRGC and the MOIS are political subdivisions of Iran); *Hartwick I*, 2020 WL 12968924, at \*2 ("As an initial matter, the Court finds that . . . MOIS[] and the IRGC each constitute a foreign state within the meaning of § 1608(a)." (citation modified)); *Holladay I*, 406 F. Supp. 3d at 59 ("[T]he core functions of IRGC and MOIS are inherently governmental." (citation modified)); *see also, e.g.*, *Dehnoushi v. Islamic Republic of Iran*, No. 25-cv-2109, 2026 WL 1786419, at \*1–2 (D.D.C. June 22, 2026) (Judge Moss reaffirming his finding in *Holladay I* that the IRGC and the MOIS are political subdivisions of Iran after a challenge by the plaintiffs); *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 19 (D.D.C. 2009) ("Defendants MOIS and the IRGC are political subdivisions of the State of Iran, and therefore are treated as members of the State of Iran itself."). The Court agrees with those decisions. Accordingly, all three are subject to the service requirements of Section 1608(a).

Section 1608(a) "prescribes four methods of service, in descending order of preference." *Holladay I*, 406 F. Supp. 3d at 61 (quoting *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008)). It requires a plaintiff to "attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Id.* (quoting *Ben-Rafael*,

3

540 F. Supp. 2d at 532).  The provision provides that a party must serve a foreign state or political subdivision

(1)      by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2)      if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3)      if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4)      if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services— and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).  "'[S]trict adherence to the terms of § 1608(a) is required,' and 'neither substantial compliance, nor actual notice' suffices." *Przewozman v. Islamic Republic of Iran*, 628 F. Supp. 3d 307, 314 (D.D.C. 2022) (citation modified) (first quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994); and then quoting *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015)).

It is well established that the first two methods of service are unavailable because "[n]o 'special arrangement' governs service between the United States and Iran, nor is Iran party to an international convention on service of judicial documents."  *Id.* at 314–15 (quoting *Braun v.*

*Islamic Republic of Iran*, 228 F. Supp. 3d 64, 78 (D.D.C. 2017); *accord, e.g.*, *Namazi v. Islamic Republic of Iran*, No. 24-cv-3506, 2026 WL 1960706, at *6 (D.D.C. July 7, 2026); *Fishbeck*, 2021 WL 6808189, at *4; *Hartwick I*, 2020 WL 12968924, at *3; *Holladay I*, 406 F. Supp. 3d at 61. Accordingly, Plaintiffs attempted service under Section 1608(a)(3) by asking the Clerk of Court to send a copy of the summons, complaint, and notice of suit, along with Farsi translations of those documents, to Iran's Minister of Foreign Affairs. *See* ECF No. 10. The Clerk of Court complied on July 16, 2024, *see* EECF No. 14, and Plaintiffs later filed a notice of failed service, *see* ECF No. 16.

Because thirty days had passed since service was attempted under Section 1608(a)(3), on September 17, 2026, Plaintiffs provided the required materials to the Clerk of Court, including the fee charged by the Department of State for serving documents under the FSIA, and requested service under Section 1608(a)(4). *See* ECF No. 17. The Clerk of Court duly shipped the service package to the Department of State. *See* ECF No. 19. On January 27, 2025, a representative from the Department of State informed the Court that the documents were delivered on December 2, 2025, to the Iranian Ministry of Foreign Affairs under cover of diplomatic note by the Foreign Interests Section of the Embassy of Switzerland in Tehran, which—because the United States does not maintain diplomatic relations with Iran—assists the United States with such service. *See* ECF No. 20. Plaintiffs have therefore effected service on Iran, the IRGC, and the MOIS under Section 1608(a)(4). *See, e.g.*, *Fishbeck*, 2021 WL 6808189, at *4; *Hartwick I*, 2020 WL 12968924, at *3–4; *Holladay I*, 406 F. Supp. 3d at 62.

5

2.    Agency or Instrumentality of a Foreign State

The FSIA denies an "agency or instrumentality of a foreign state" as

any entity—

(1)    which is a separate legal person, corporate or otherwise, and

(2)    which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3)    which is neither a citizen of a State of the United States . . . nor created under the laws of any third country.

28 U.S.C. § 1603(b).  Additionally, to be considered an agency or instrumentality of a foreign state (rather than a political subdivision), an entity's "core functions" must be "commercial" rather than governmental.  *Roeder*, 333 F.3d at 234.  Again, several courts have found that Bank Melli, Bank Markazi, and the NIOC meet those requirements and "are appropriately served under Section 1608(b) as instrumentalities of Iran."  *Wise v. Bank Markazi Jomhouri Islami Iran*, No. 19-cv-995, 2023 WL 9781682, at *1 (D.D.C. Oct. 12, 2023).  For example, in *Hake v. Bank Markazi Jomhouri Islami Iran*, the court addressed the status of each of those three entities and found they were agencies or instrumentalities of Iran.  *See* No. 17-cv-114, 2022 WL 4130837, at *6–7 (D.D.C. Sep. 12, 2022).  Specifically, *Hake* found that each was wholly owned by the government of Iran and had a predominantly commercial purpose.  *See id.* at *6.  The core function of Bank Melli was commercial because it "provides commercial banking services in Iran and internationally including foreign exchange transactions, foreign currency accounts, long-term and short-term foreign currency investment deposits and term deposits, money transfer and remittances, plastic card services, and imports services in industry and commercial economic zones"; Bank Markazi "issues loans and reports its profits," establishing the "predominance of [its] commercial functions"; and the NIOC engages in "commercial activities" such as drilling for, producing, refining, distributing,

and exporting oil, gas, and petroleum products. *Id.* (first quoting *Fishbeck*, 2021 WL 6808189, at \*2; and then quoting *Hartwick II*, 2021 WL 6805391, at \*7); *see also, e.g.*, *Crescent Petroleum Co. Int'l Ltd. v. Nat'l Iranian Oil Co.*, 22-cv-1361, 2024 WL 1885498, at \*3 (D.D.C. Apr. 30, 2024) ("NIOC is an agency or instrumentality of Iran." (quoting *Holladay II*, 523 F. Supp. 3d at 111));; *Hartwick II*, 2021 WL 6805391, at \*4–8 (finding Bank Markazi and the NIOC to be agencies or instrumentalities of Iran); *Henkin v. Islamic Republic of Iran*, Nos. 18-cv-1273, 19-cv-1184, 2021 WL 2914036, at \*17–18 (finding Bank Melli and Bank Markazi to be agencies or instrumentalities of Iran); *Fishbeck*, 2021 WL 6808189, at \*2–3 (finding Bank Melli, Bank Markazi, and the NIOC to be agencies or instrumentalities of Iran); *Holladay II*, 523 F. Supp. 3d at 109–14 (finding Bank Markazi and the NIOC to be agencies or instrumentalities of Iran); *Hartwick I*, 2020 WL 12968924, at \*5 (finding Bank Melli to be an agency or instrumentality of Iran); *Holladay I*, 406 F. Supp. 3d at 59–60 (finding Bank Melli to be an agency or instrumentality of Iran). The evidence before this Court supports those findings: Plaintiffs have submitted a declaration from Gary Kleiman, "a consultant with demonstrated experience in global emerging economies and financial market analysis, including specific experience with Iran's banking system and capital markets," *Hartwick II*, 2021 WL 6805391, at \* 3; *see also* ECF No. 44-1, ¶¶ 1–4 (outlining Kleiman's expertise), who explains that Bank Melli, Bank Markazi, and the NIOC are each wholly owned by the Iranian government and have primarily commercial functions, *see* ECF No. 44-1, ¶¶ 9, 13–14, 18, 21, 23, 26, 30–31. Indeed, the courts in *Fishbeck* and *Holladay II* relied on submissions from Kleiman that are materially identical to the one in this case to find that Bank Melli, Bank Markazi, and the NIOC (in *Fishbeck*) and Bank Markazi and the NIOC (in *Holladay II*) are agencies or instrumentalities of Iran. *Compare* ECF No. 44-1 (Kleiman Declaration) *with* Sworn Affidavit of Gary N. Kleiman*, Fishbeck*, No. 18-cv-2248, 2021 WL 6808189 (D.D.C. Mar. 27, 2020), ECF No.

39-1, *and* Declaration of Gary N. Kleiman, *Holladay II*, 523 F. Supp. 3d 100 (D.D.C. July 8, 2020), ECF No. 99-1.  This Court agrees and finds that Section 1608(b) governs service on those entities.

"Like § 1608(a), § 1608(b) sets out a progression of methods through which service can be made." *Fishbeck*, 2021 WL 6808189, at *5.  The first two mirror the methods of Section 1608(a)— "the 'special arrangement' and 'applicable international convention' mechanisms,"—and, as above, neither is available for service on Iranian entities.  *Holladay I*, 406 F. Supp. 3d at 63; *accord Hartwick II*, 2021 WL 6805391, at *8; *Fishbeck*, 2021 WL 6808189, at *5.  "This, then, leaves the third paragraph, which provides three alternatives" among which a plaintiff may choose:

> [I]f service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>
> (A)  as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
>
> (B)  by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>
> (C)  as directed by order of the court consistent with the law of the place where service is to be made.

*Holladay I*, 406 F. Supp. 3d at 62–63 (quoting 28 U.S.C. § 1608(b)(3)).

Plaintiffs originally sought to serve Bank Melli, Bank Markazi, and the NIOC in July 2024 under Section 1608(b)(3)(B), asking the Clerk of Court to send the required materials via certified mail, return receipt requested.  *See* ECF No. 11.  The Clerk performed as requested.  *See* ECF No. 15.  In June 2025, Plaintiff filed a notice of failed service, asserting that its efforts under Section 1608(b)(3)(B) had "failed because the requisite proof of service ha[d] not been received."  ECF No. 25 at 1.  They therefore asked the Court to approve service by email to certain officials and general email addresses of each of these three Defendants pursuant to Section 1608(b)(3)(C),

arguing that service in such a manner was "'reasonably calculated to provide actual notice' and that 'service by email [was] consistent with Iranian law.'" ECF No. 26 at 6. As support, Plaintiffs cited *Crescent Petroleum* and *Wise*, both cases in which the court approved service by email on certain officials with confirmation of delivery requested. *See id.* at 8; *see also Crescent Petroleum*, 2024 WL 1885498, at *6 (finding that service on NIOC officials with delivery receipt requested was appropriate under Section 1608(b)(3)(C)); Minute Order, *Wise v. Bank Markazi Jomhouri Islami Iran*, No. 19-cv-995 (D.D.C. June 4, 2024) (approving service on Bank Melli, Mank Markani, and the NIOC "by emailing certain of their officials with delivery receipt requested"). Judge Ali issued an Order approving that method of service on August 4, 2025. Minute Order (Aug. 4, 2025). On August 15, 2025, Plaintiffs filed a notice of service with the Court attaching delivery receipts for the emails sent Bank Melli, Bank Markazi, and the NIOC. *See* ECF Nos. 30, 30-2 through 30-7. Plaintiffs' counsel also asserted that "no notifications of a failed transmission (i.e., a 'bounce-back') have been received for th[ose] emails." ECF No. 30-1, ¶ 11. Accordingly, Plaintiffs have served Bank Melli, Bank Markazi, and the NIOC "as directed by order of the court," which found the method of service "reasonably calculated to provide actual notice" and "consistent with the law of the place where service [was] to be made." 28 U.S.C. § 1608(b)(3)(C).

### B.    Personal Jurisdiction

Even where a defendant is in default, a court must "satisfy itself that it has personal jurisdiction" over that defendant. *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). "The FSIA provides that 'personal jurisdiction over a foreign state shall exist as to every claim for relief under which the district courts have subject matter jurisdiction' under 28 U.S.C. § 1330(a) 'where service has been made under 28 U.S.C. § 1608.'" *Crescent Petroleum*, 2024 WL 1885498, at *5 (citation modified) (quoting 28 U.S.C. § 1330(b)); *see also Price v. Socialist People's Libyan Arab*

*Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) ("[U]nder the FSIA, 'subject matter jurisdiction plus service of process equals personal jurisdiction.'" (quoting *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987))). A federal court has subject matter jurisdiction over "any nonjury civil action" asserted "against a foreign state" (including a political subdivision, agency, or instrumentality of a foreign state) "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a) ("The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement."); 28 U.S.C. § 1603(a) (defining, for purposes other than service of process, a "foreign state" as "includ[ing] a political subdivision of a foreign state or an agency or instrumentality of a foreign state"). Under the FSIA's terrorism exception, sovereign immunity is abrogated where "(1) 'money damages are sought,' (2) 'against a foreign state' for (3) 'personal injury or death' that (4) 'was caused' (5) 'by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act.'" *Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68, 79 (D.D.C. 2010) (citation modified). At this stage, Plaintiff has not asked the Court to find that it has subject matter jurisdiction over this case and consequently has not addressed those requirements. And although some of them are obviously met—this is a nonjury civil action against a foreign state and political subdivisions and agencies or instrumentalities of that state, for example—others will require some proof—not least, whether Defendants provided material support for the extrajudicial killings alleged in the complaint. Accordingly, the Court cannot determine if there is subject matter

jurisdiction over this case and, therefore, cannot determine if the statutory requirements for personal jurisdiction have been met.

Additionally, whether a plaintiff has satisfied "[t]he *statutory* requirements for personal jurisdiction" is a separate question from whether any constitutional requirements for the exercise of personal jurisdiction have been met. *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 442 n.10 (D.C. Cir. 1990); *see also, e.g.*, *GSS Grp. Ltd. v. Nat'l Port Auth.*, No., 09-cv-1322, 2011 WL 13121428, at *3 (D.D.C. Aug. 10, 2011) ("[T]he statutory component of a personal jurisdiction analysis is separate from the constitutional component."). In *Price*, the D.C. Circuit addressed, among other things, "whether the Due Process Clause" of the Fifth Amendment—which provides that "[n]o *person* shall . . . be deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V (emphasis added)—was "offended by the District Court's assertion of personal jurisdiction over Libya" in an FSIA case.[2]  294 F.3d at 95.  It was "undisputed" in that case "that Libya ha[d] no connection with the District of Columbia or with the United States, except for the alleged fact that it tortured two American citizens in Libya," which "would be insufficient to satisfy the usual 'minimum contacts' requirement" of the Due Process Clause.[3]  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Ultimately, the Court held that did not matter because "foreign states are not 'persons' protected by the Fifth

---

[2] "In such federal question cases, 'the constitutional limits of the court's personal jurisdiction are fixed not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment.'" *Rashid v. Qatar Airways Grp. Q.C.S.C.*, No. 25 -cv-10109, 2025 WL 3687755, at *4 (D. Mass. Dec. 19, 2025) (citation modified) (quoting *United Elec., Radio, & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992)); *see also, e.g.*, *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 and 50 U.S.C. § 1705*, 381 F. Supp. 3d 37, 52 (D.D.C. 2019) ("When the 'court exercises personal jurisdiction by virtue of a federal statute authorizing nationwide service of process' the Fourteenth Amendment . . . 'is inapplicable.'" (quoting *SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004)).

[3] As discussed in note 5, *infra*, the Supreme Court has now ruled that the Fifth Amendment does not impose a minimum contacts requirement but allows a "more flexible jurisdictional inquiry." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 16 (2025).

Amendment."[4]  *Id.* at 96; *see also, e.g.*, *GSS Grp. Ltd. v. Nat'l Port Auth.*, 774 F. Supp. 2d 134, 138 (D.D.C. 2011) ("It is established that foreign sovereign nations are not among the 'persons' afforded rights by the Fifth Amendment and so receive no due process protections." (citation modified)), *aff'd*, 680 F.3d 805 (D.C. Cir. 2012).

However, *Price* explicitly limited its holding to "reach[] only an actual foreign government" and left open "whether other entities that fall within the FSIA's definition of 'foreign state'—including corporations in which a foreign state owns a majority interest—could yet be considered persons under the Due Process Clause." *Price*, 294 F.2d at 99–100 (citation omitted). Later, in *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005), the D.C. Circuit "took on the issue expressly avoided by *Price*"—at least as to agencies and instrumentalities of a foreign state. *Valore*, 700 F. Supp. 2d at 71 n.13. *TMR Energy* found that assessing whether an entity is an agency or instrumentality of a foreign state is not the same as assessing whether that entity is a "person" under the Fifth Amendment.  Rather, determining "whether an agency or instrumentality of a foreign state is entitled to the protections of the due process clause" requires "a different analysis" than figuring whether "service of process under the FSIA" was proper. *TMR Energy*, 411 F.3d at 301; *see also Frontera Res. Azerbaijan Corp.*, 582 F.3d at 400 ("The simple fact that [an agency or instrumentality] is deemed a foreign state as a *statutory* matter, however, does not answer the *constitutional* question of [that entity's] due process rights. [An agency or instrumentality] may indeed lack due process rights like a foreign state, but similar statutory treatment will not be the reason."). Specifically, where the foreign state "exert[s] sufficient control over the [agency or instrumentality] to make it an agent of the State, then there

---

[4] The Second Circuit and the Seventh Circuit have followed suit.  *See Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 694 (7th Cir. 2012); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 399 (2d Cir. 2009).

is no reason to extend to the [agency or instrumentality] a constitutional right that is denied to the sovereign itself." *TMR Energy*, 411 F.3d at 301. And, although *TMR Energy* addressed only agencies or instrumentalities of foreign states, courts have recognized that its "logic . . . applies with equal force to political subdivisions of foreign states."[5] *Valore*, 700 F. Supp. 2d at 71 n.13.

[5] In 2025, the Supreme Court issued two potentially relevant opinions concerning personal jurisdiction. In *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, the Supreme Court reversed a Ninth Circuit decision applying precedent that required, as a statutory matter, "a traditional minimum contacts analysis" before a court could exercise personal jurisdiction over a "foreign state." 605 U.S. 223, 231 (2025); *see Devas Multimedia Private Ltd. v. Antrix Corp.*, No. 20-36024 et al., 2023 WL 4884882, at *1–2 (9th Cir. Aug. 1, 2023) (stating that, since its decision in *Thomas P. Gonzalez Corp. v. Consejo de Produccion de Costa Rica*, 614 F.2d 1247 (9th Cir. 1980), the Ninth Circuit had "continued to apply the rule that personal jurisdiction under the FSIA requires a traditional minimum contacts analysis" and noting that "the application of the minimum contacts analysis to actions under the FSIA in *Gonzalez* is statutory rather than constitutional"), *rev'd sub nom. CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223 (2025). The Supreme Court held that such an analysis was unnecessary, remarking that Congress did not "dispense[] altogether with proof of contact between the foreign state and the United States" because "the FSIA's immunity exceptions themselves require varying degrees of suit-related domestic contact before a case may proceed." *CC/Devas*, 605 U.S. at 233. It concluded that "[p]ersonal jurisdiction exists under . . . the FSIA when an immunity exception applies and service is proper." *Id.* at 237. But *CC/Devas* left for another day the question whether "the Fifth Amendment's Due Process Clause *itself* requires a showing of minimum contacts before a federal court can exercise personal jurisdiction over a company owned by a foreign sovereign" because the court below had not confronted it. *Id.* (emphasis added).

Two weeks after the Supreme Court decided *CC/Devas*, it held in *Fuld* that, although the language of the Due Process Clauses of the Fifth and Fourteenth Amendments is the same, because of "the distinct territorial reach of the Federal Government's sovereign power, it makes little sense to mechanically import the limitations that the Fourteenth Amendment imposes on the authority of state courts" into the Fifth Amendment. 606 U.S. at 16. Rather, the Court determined that "the Due Process Clause of the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry" than the "Fourteenth Amendment minimum contacts standard." *Id.* But the Supreme Court "has not [yet] delineated [the] precise bounds" of that inquiry. *Rashid*, 2025 WL 3687755, at *4; *see also* 4 Wright & Miller's Federal Practice and Procedure § 1068.1 (4th ed.) ("[T]he *Fuld* decision leaves open the precise test for applying the Fifth Amendment to cases where personal jurisdiction is authorized by federal statute . . . ."). And so, after *CC/Devas* and *Fuld*, although there is no *statutory* limitation to the federal courts' exercise of personal jurisdiction over political subdivisions, agencies, and instrumentalities of a foreign state other than those in the FSIA itself, there seems to be some *constitutional* limitation. And whatever that limitation is, it would appear to be something less than the minimum contacts required by the Fourteenth Amendment. *Cf. Rashid*, 2025 WL 3687755, at *4 ("Because the [p]laintiffs have made a prima facie showing that [d]efendant has sufficient minimum contacts with the United States to make the exercise of specific jurisdiction over [d]efendant reasonable, this Court need not address the bounds of the new, more flexible Fifth Amendment standard.").

Where does that leave *Price* and *TMR Energy*? Undisturbed, apparently. Neither *CC/Devas* nor *Fuld* addressed whether a foreign sovereign itself enjoys the protections of the Fifth Amendment, so *Price*'s holding stands. Further, *Fuld* can have had no effect because neither *Price* nor *TMR Energy* purported to apply Fifth Amendment limitations to the exercise of personal jurisdiction in a case under the FSIA. Instead, *Price* bypassed the Fifth Amendment where a foreign sovereign is the defendant. *See* 294 F.3d at 99 ("In sum, we hold that the Fifth Amendment poses no obstacle to the decision of the United States government to subject [a foreign state] to personal jurisdiction in the federal courts."). *TMR Energy* merely "extend[ed] *Price* to agents of foreign states," *Hegna v. Islamic Revolutionary Guard Corps.*, 908 F. Supp. 2d 116, 118 n.1 (D.D.C. 2012), offering a way that an agency or instrumentality could be treated as the sovereign itself and, thus, also be exempt from Fifth Amendment protections, *see TMR Energy*, 411 F.3d at 301 ("If the [foreign state] exert[s] sufficient control over the [agency or instrumentality] to make it an agent of the State, then there is no reason to extend to the [agency or instrumentality] a constitutional right that is denied to the sovereign itself."). Thus, where personal jurisdiction over a foreign state or over a political subdivision, agency, or instrumentality that is "an agent of the [foreign] [s]tate" is at issue, *id.* at 301, "as a

So, under D.C. Circuit precedent, although there is no constitutional impediment to exercising personal jurisdiction over the "actual foreign government" of Iran, *Price*, 294 F.3d at 99, making that determination as to the political subdivisions (the IRGC and the MOIS) and agencies and instrumentalities (Bank Melli, Bank Markazi, and the NIOS) is more complicated. And here, Plaintiffs have made no attempt to establish that those other entities are "sufficient[ly] control[led]" by the government of Iran to make them "agent[s] of the State." *TMR Energy*, 411 F.3d at 301.

Accordingly, although the Court will grant Plaintiffs' request for an Order finding that they have properly effected service on each Defendant, it is premature to determine whether the Court may exercise personal jurisdiction over them. Plaintiffs can address that issue when they file their anticipated motion for default judgment.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for an Order Finding Effective Service of Process Pursuant to 28 U.S.C. § 1608, ECF No. 44, is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**. Specifically, the motion is granted to the extent that it seeks an Order finding that Plaintiffs have properly served each Defendant; it is denied to the extent that it seeks an Order finding that the Court may exercise personal jurisdiction over Defendants.

Date:    July 21, 2026

_____
G. MICHAEL HARVEY
United States Magistrate Judge

---

constitutional matter, there is no constitutional matter," *I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1191 (D.C. Cir. 2003).